Good morning, your honors. May I please the court? This is not a case where the plaintiff says red and the defendant says blue such that they're factual questions for a jury to resolve. Everybody agrees on exactly what happened on the morning of April 13th before school started. The plaintiff calls a Kia hotline and begins by saying she's delivering a quote warning to then twice indicates that her aggression level is high and that she's upset before demanding help with her cell phone. If there's no dispute about the facts then you don't need to remind us about it because we've read the briefs. Fair enough, your honor. On those undisputed facts, the central question before the court is whether there is probable cause or for QI purposes at least arguable probable cause. Case after case teaches us that probable cause is a low bar and arguable probable cause is of course an even lower bar. The plaintiff's only defense here is that when she made the statement she was joking or kidding. That can't possibly get her where she needs to go for several reasons. One, law enforcement officers don't have to take the plaintiff's word for it. They don't have to accept innocent explanations and in this circuit, they don't even have to vet affirmative defenses. So it's enough on this record that a third party took the comment seriously enough that they called it in to the local police department. A good example that we saw in our brief is the Judge Easterbrook opinion in our reply brief where the plaintiff in that case made the implicit comment that she was going to quote go postal. If that sort of implicit comment is enough to constitute probable cause then certainly an express statement while somebody is on a school campus that they may kill 20 little kindergartners is enough to satisfy probable cause. And if more confirmation is needed then we also have the independent intermediary doctrine in this case. That of course is the doctrine that says if a neutral magistrate makes a probable cause determination then the arresting officer is insulated from a fourth amendment violation. And again in this circuit that doctrine applies even if the determination comes after a warrantless arrest like it did here on April the 14th and then again on April the 17th. So the doctrine applies in this case. The plaintiff disputes the timing of the preliminary hearing and makes a Gerstein slash Riverside type claim but they don't dispute that a probable cause determination was made at least on April the 17th and a bond was set and so that certainly triggers the independent intermediary doctrine. The only way you would be able to get around that was if you had some sort of Frank's or Maley theory. Again that's not made in this case nor could it be because it's undisputed from the plaintiff's own testimony that at least at the April 17th preliminary hearing she stood up in front of the judge and said hey I was just kidding. And it didn't matter to the judge. The judge still issued a bond. So I think for all of those reasons the fourth amendment claims go away because there's probable cause on this record and at a minimum at least arguable probable cause. So that brings us to the due process claim and that again is the Gerstein slash Riverside claim where they say well the preliminary hearing didn't come soon enough. There's several problems with that claim. Our front line position is that it is just a red herring from the plaintiff's perspective that they would say Gerstein requires some formal adversarial hearing like what happened on April the 17th. That is the opposite of what Gerstein says. It says that adversarial process is not required and in fact in the mind run of situations what would happen is a law enforcement officer would go and present a judge with an affidavit and get a warrant and in the situation of a warrant, arrest pursuant to a warrant then there is no Gerstein claim. That falls away and you may have a preliminary hearing by virtue of state law procedure but you don't have one under the United States Constitution. So our front line position here is that on April the 14th that was enough to satisfy Gerstein. We know that the municipal court clerk sent the criminal case file along with the charging affidavit to the municipal judge. The municipal judge made a call to the municipal court clerk and said leave her in jail until the 17th. So in our view, that determination on April the 14th is enough to satisfy Gerstein. Even if it were not, even if the plaintiff had presented some, identified some case for purposes of qualified immunity, which has not been done, that would say that that wasn't enough. Again, it hadn't been done. But even if you get there, you still have the fallback argument that the person that was corresponding with this municipal judge about whether to release the plaintiff or not was a municipal court clerk, not the arresting officer. And of course, the municipal court clerk is not a named defendant in this case. Then the backup to the backup is that even if you were trying to charge the arresting officer in the face of the municipal court clerk being the one that's corresponding with the judge, then the plaintiff has identified no case that would say that a municipal court clerk, arresting officer, or anybody else could just defy the instruction of a municipal court judge that says. So Judge Bramlett didn't even address the second prong of the qualified immunity analysis. I think that's pretty strange. He's, I'm sure, had lots of Section 1983 and Qualified Immunity cases in his long career. That's certainly a glaring error in the analysis. And to be frank, Judge Smith, I mean, if you read the facts of the opinion, I feel pretty good to start out with when he sets out the facts, and then we get to the analysis, and it's just sort of genuine issues of material fact, genuine issues of material fact, and we move on. So that certainly is a glaring error that the second prong of QI was not performed on this case. But we also think the underlying constitutional violation on these undisputed facts is crystal clear, and we would ask the court to decide it on that prong, because, of course, there's also a Monell claim that was left in the case, and if the court were to decide it on the constitutional prong, then certainly that takes care of the Monell issue as well. So I do think it is important to set out the constitutional standards and point out the low bar of probable cause, which I think we surpassed without getting anywhere close to arguable probable cause, which is all we would need for purposes of QI. There's other problems with the individual liability claim against the police chief who was not even involved in the arrest. One other thing I'll say, because I expect to hear this from my friend on the other side, because this has always sort of been their main argument in the case, is they point to this state statute that deals with certain elected officials and then schoolteachers and say, oh, well, they should have got a probable cause hearing, and we think that's the problem in the case. There's several problems there. But that was just for schoolteachers in the performance of their regular duties, right? That's exactly right, Your Honor, and that's one of the three problems with the argument. Frontline problem is that even if that statute did apply, which it does not, it's a state statute, and that does not equate to the constitutional minimum. Those two things aren't the same, but then to Your Honor's point, it doesn't apply anyway. One, it doesn't apply because by its very text, it says it only applies to arrests pursuant to a warrant, and then subsection 3 of the statute says it has no impact on warrantless arrests. So to the extent they're trying to say, well, you always have to have a warrant, and this statute applies, that couldn't possibly be the law. Did you properly raise the question of state law immunity, and what form was that raised before the district court? In our summary judgment briefing, Your Honor, the MTCA arguments as well. You did assert state law immunity? I believe we did, Your Honor, and I believe there wasn't much of a response to it. And we may claim abandonment in the reply brief and on appeal by not addressing it, but certainly we addressed the state law claims to the extent they were pressed by the plaintiff, and they all fell for the same reasons that the federal claims fell, namely lack of probable cause. But even if you were to get to the state law, the additional hurdles of MTCA immunity, they've got to overcome more bars than just the substantive elements of the claim. Jumping back just for a second to that state statute, certainly there's the problem that the statute doesn't apply because it was not calling a key a hotline and trying to get help with your mobile app is not pursuant to official duties, and in fact, that was the plaintiff's very testimony at her deposition. But again, the statute also says it doesn't apply to warrantless arrest, and if that were the case, if there was some indication that it would apply, that would mean that a school teacher could pull out a gun in the middle of the classroom and shoot somebody and they couldn't arrest them because you'd have to wait until you had a hearing. That can't possibly be the law, and that's not what the statute says. It says it only applies when you're going to get a warrant, and so it's adding extra state law protections if you're going through the process of getting a warrant, much like the idea of a preliminary hearing under state law to determine probable cause. Under Gerstein, that's not what the federal constitution requires. It requires something less, but you have added state law procedures. Essentially, that is our argument. We think the facts are undisputed here. Everybody knows what happened. The plaintiff admitted to making the statements. The excuse of I was just kidding, it's just not enough. It's certainly not enough in the context. It's one thing. We've added around a million hypotheticals in this case about what if you have somebody at the office who says, you know, I'm going to kill Todd because he never returns his emails quick enough. It's one thing, context matters for all this stuff. It's one thing to make that in the context of friends. Obviously, this court has cases where people are making some Facebook comments among their friend group, but in this case, an individual made these comments while they were on a school campus to a third party that they didn't know in an attempt to influence them to get some help out of them. It's more hyperbole, I guess, than a joke. I don't think anybody would find it very funny. Maybe it is hyperbole, but it's not the kind of hyperbole that can rise to the level of probable cause, and it did in this case. So, we would ask the court to reverse and render judgment on all claims. Mr. Butler, I realize this is not the focus of your argument, but you do represent the city, right? That's right. Okay. So, can I talk to you about the Monell claim for a second? Yes, sir. Suppose, take the officers out for a second. Imagine they settled, and it's just you're representing the city of Magnolia. You file a summary judgment motion, Monell denied. Right. Can you appeal that? Jurisdictional. Normally, no. Of course, we say pendent appellate jurisdiction, which this court has said is a strange animal, fully appreciate that. There is a wrinkle in this case that I think it makes it a little different. Before we get to the wrinkle, I just want to make sure we got the general rule. The answer is not generally no. It's never, never can you appeal Monell, just Monell. Just Monell, right, correct. The only question is whether it tags along with another claim. I think that's right. You cited in your jurisdictional statement a couple of cases, including one from like the last year or two, where our court has exercised pendent appellate jurisdiction over the Monell claim. But none of those, at least that you cited, where does the court explain why we can do that? We have done it. I'm not disputing it. But that doesn't mean that we thought about it, or there's obviously a long list of cases that say these sort of jurisdictional issues that are lurking and never squarely decided, don't mind. So help me understand how the Monell claim, right, which obviously has no QI dimension to it, has different elements, different defendant, different elements, you have the policy practice, all that. How would that ever, if we actually thought about it, how would it ever meet the pendent appellate? Right. I understand, Your Honor. And I certainly am familiar with Your Honor's separate opinion, talking about these issues. Other circuits, I'll start with the premise of other circuits have certainly even been more accepting of pendent appellate jurisdiction in the context of Monell than this circuit has. For practical purposes, it really doesn't matter, because I'm asking you to decide it on the underlying constitutional idea of probable cause. And if we get there, then that takes care of Monell anyway. But in the context of QI and Monell, most of the time, this court has said, that's a strange animal. We're not going to do it. The repo in this case is the city is already before the court, right? The city is already before the court because of state law claims, right? That is immediately appellable, which again, has been questioned. But under this court's current precedent, those claims are appellable, right? And so this is not a situation, like I've had these cases before where the court's told me, no, we're not going to take jurisdiction over your Monell claim on a QI case. But the central thrust of those opinions is really, we're not going to reach out and grab jurisdiction over a party that's not before the court. My argument is better this time, because the city is before the court. So you're not reaching out and grabbing a party that's not here and dragging them into the case. They're here regardless. Because of the MTCA immunity, it's immediately appellable. As a matter of efficiency and economy, there's all those reasons that make it Thank you. You saved time for a rebuttal, Mr. Butler. Ms. Payne. Thank you, Your Honors. My name is Shirley Payne. I represent the plaintiff below, the kindergarten teacher, Stacy Bonds. The district court below followed all of the elements that have been put forth in the most recent or very recent Fifth Circuit decision, Ramirez v. Granado, in which there was just a vote about whether to go en banc. And the vote split nine to eight, but the decision itself was affirmed. That decision found that there was a requirement of finding cause and went through the same elements that were relied on by our district below. So those elements here are still what controls for a determination. And there was no determination of probable cause below. What do you do with, it was referred to in the argument, so what do you do with the fact that Judge Bramlett, even if we were to agree with him on the first prong, didn't even touch on the second prong of qualified immunity, that is clearly established law? I would disagree with that reading. It seemed to me that he addressed every element, including every element that was just enunciated in the Ramirez case as well, even relying on some of the same law. And that is controlling at this point. And can you point to me where he deals with the clearly established law in question?  Local governments are liable for a policy or custom that causes a constitutional injury under Section 1983, citing Bonnell and other cases from the Fifth Circuit. But of course, Bonnell is not a qualified immunity question. And cities can't raise qualified immunity. Qualified immunity is not a Bonnell defense. It has nothing to do with Bonnell. So I understood that Judge Smith's question to you was whether the district court considered the clearly established law requirement for qualified immunity as to the individual officers. And so my question to you is, where did he do that? As to Woodall, first, he considered the fact that she admitted in her deposition that she considered these issues and made the policy for the city. And that's page 10 of 11 under malicious prosecution. And concluding, the Supreme Court of Mississippi has held that the absence of probable cause for a prosecution is circumstantial evidence for malice. And the jury may infer malice from a finding that has been adapted in reckless disregard of another person's rights. I'm a third time's a charm sometimes, so I'm going to try it one more time. If we don't do it this one, I'll let it go. Qualified immunity requires two elements. The first is a constitutional violation. The second is one that is clearly established at the time of the offense, or at the time of the violation, the clearly established law requirement. The second prong, where does the district court consider the second prong of the qualified immunity analysis? Saying that it was clearly established. On page 9 of 11, courts have discretion to decide whether to first address the constitutional violation prong or the clearly established prong. Citing Ashcroft, and clearly established, means that at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he's doing is unlawful. In other words, existing precedent must have placed the statutory or constitutional question beyond debate for the unlawfulness of an officer's conduct to be clearly established. You're on page 9? Page 9 of 11, yes sir. I don't see what you're quoting. I'm on page 9 of the district court's opinion. Correct. The section begins, Supreme Court, the bottom of the page, Supreme Court precedent holds police officers are entitled to qualified immunity under 1983 unless they violated a federal statutory constitutional right and the unlawfulness of their conduct was clearly established at the time. Right, that is the standard, no doubt. So then there are four claims, right? There's due process, malicious prosecution, etc. Does the district court ever apply the clearly established law requirement to any of those four claims against the individual officers? Continuing on page 9, yes sir, element by element, clearly established meansness and all the elements, general factual dispute as to whether a reasonable officer would have believed probable cause existed, furthermore genuine issue of material fact as to whether plaintiff was detained illegally without a probable cause hearing and whether the circumstances of this case provide sufficient evidence of malice for defendants to be liable. Summary judgment improper. Okay, why don't we move on? I don't feel like I've satisfied the court. That's okay. I told you I was only going to try three times, so you were, I appreciate the indulgence for the extras. What do you do with the Quadra case, that's a Fifth Circuit 2010 case that was cited by Mr. Butler in his opening brief and you didn't mention it in your brief. Quadra says there's no liberty interest or due process right to be free from criminal prosecution unsupported by probable cause. That's what that opinion says and you didn't give us your response to that in your brief, so now's the opportunity. What do you do with the Quadra case? C-U-A-D-R-A, it's at the bottom of page 23 of his brief. If you don't have an answer for it, that's okay. I don't want to take up all of your time. You have other things you want to cover, but I was just curious why you didn't respond to that in your appellee's brief. Anyway, the question is whether there's a 14th Amendment liberty interest or substantive due process right to be free from criminal prosecution unsupported by probable cause. Do you agree that there is no such 14th Amendment right? This is, I believe, addressed fully in Judge McCormick's brief. It's hard to choose where to start reading, and I apologize for that, but it just seems... 1983 provides a vehicle by which plaintiffs may recover against any person who deprives an individual of federally guaranteed rights under color of state law. And be free from unlawful arrest. And there was never a finding that there was a probable cause for her arrest at all. And particularly if the other side is now in their brief saying that they agree that Ms. Bonds was never making an actual threat. And we have an additional case on that. There was a day when this seemed kind of silly to make an arrest, but now today with so many school shootings, everyone on high alert, it shifts back the other way as a practical matter. And that cloud hangs over this case. In today's world, not to take seriously a threat would be difficult. In other words, what did it earlier today may sound like a sort of a comment, an offhand comment by a teacher. In this context today, law enforcement really, it'd be hard to say that they violate some principle by not acting on it. Do you follow my drift? That's an overarching cloud in this case. When you come back to the legal, and it's with that backdrop that this whole case proceeds. And to make sense of it, you have to be aware of that reality. To turn this over, the people that saw or heard this information, what were they supposed to do? Ignore it? Believe her when she explained that these threats were not made as threats. She didn't ever make the threat against the children. She was expressing her own frustration as the district court explained. And then even if it was just characterization, she withdrew it. But as the district court also found, Ms. Vaughn, withdrew any possible threat. I'm sorry. I speak softly. Unfortunately, my ears don't reach that. As the district court also found, she withdrew any threat. She said that that was over. There was nothing else. She thanked the Kia representative for taking care of her car. As children started entering the classroom and no action was ever taken against the children. And that was what our client stated in her written statements. And in fact, she had been with the children for well over an hour and nothing had taken place. No one went in to see if there was any sort of threat against the children. Cowering over in a corner? No. Nothing else happened. And as to the whole idea that even saying the word killed could make it a real threat, that was overturned in the Fifth Circuit in a case, McPherson v. Rankin, 736 F. Second, 175, where this circuit specifically held that where she is, quote, I'm going to kill her. That doesn't mean I'm going to kill her with a knife or weapon. It's an expression of conversation. And the court went on, when a private expression is involved, the balancing test encompasses the manner, time, and place in which it's delivered, as well as the context in which the statement is made. And that's from Gibbon, which is briefed below and here. So this is private expression. And the Kia representative went ahead with taking care of the car and got that out of the way. And Ms. Bonds went on telling the children, if you listen to the recording, as she welcomed the children to the classroom. And one of the boys was doing something and she said, no, no fighting, in a calm and controlled voice. There was no threat. There was never any threat when the children were involved. And as the district court also noticed, Ms. Bonds told the Kia representative, sorry, I'm upset. This has been frustrating to me. I don't mean to take it out on you or impliedly anybody else. She was simply frustrated and expressed it. The Ramirez case, as making rulings on summary judgment, is still controlling even though the vote was close in this circuit. There was no probable cause ever found for the arrest of our client. And yet she was held for over seven days. Her appearance was not an opportunity to present any evidence. There's no showing that she ever got to speak or that there was any other evidence presented. There was no finding a probable cause. And then when she appeared herself in front of the grand jury, no probable cause was found. And the charges were dismissed. I think the fact that Ramirez follows these same standards, even citing the same cases, means that this is still settled law. Now, if there are discrepancies this court would like us to review because of different standards in different courts of appeal or different circuits around the country, be glad to give you additional briefing to go nationwide. We had not done that, but we would. Again, Ramirez re-adopts the same standards used by Judge Brantley. And again, even citing some of the same background cases. We think that puts her in the clear and no actions were ever taken against those children or anyone else. So assuming, just for purposes of discussion, that you're right, that there was some kind of a constitutional violation, why is that chargeable under Section 1983 against these two defendants, Woodall and Milholland? Well, Milholland acted first saying that he arrested her without warrant, and that claim was dismissed by the district judge. Also, finding that there was no behavior in front of him, no actual danger or threat in front of Milholland that would authorize him to arrest her without a warrant. That's addressed by the district court. The other issues as to protecting Woodall, those were not addressed anywhere. She's the one who was present when Ms. Bonds was taken first to the principal's office and then down to make a call in which she was formally arrested. I guess my question was, why are these two the proper defendants in this action, if there was some kind of a violation? Because they were the ones who took her into custody without any basis. No probable cause, no prior hearing is required under the state statute. Nothing was put in place, and when she was asked about it, Ms. Woodall just said, well, yes, I can do that, stating the level of review for the city and the law enforcement. All right. Anything else, Ms. Payne? Is that everything from you? Because your time's pretty much expired. Yes, sir, Dan. I'm watching the seconds pass by. All right. It's just if there were anything else that I could brief for you further, I'd be glad to. All right. Thank you. Mr. Butler for rebuttal. Very briefly, Your Honor, just on the point that there was no determination of probable cause, there was a determination of probable cause on April the 14th, and then there was a preliminary hearing on April the 17th by which the plaintiff admitted that her deposition testimony that she was able to speak to the municipal judge and tell her it was a joke, and the judge still entered a $750,000 bond, and that document from the municipal court clerk is in the record, so there most certainly was a determination. I want to go back to the discussion we had earlier about the parties before the court and the jurisdiction, because, again, my frontline position is that I'm asking this court to decide this case on the constitutional prong, and so, Judge Smith, I take your point about the MTCA stuff, so I went back and just to satisfy myself, 351 and 354 in the record is where we address the MTCA immunity on the state law claims, and so we make the claims that the underlying elements of the state law claims fail, and we win for that reason, but then even if she could overcome the elements, then we got the additional bar of reckless disregard, which is what gets us to state law immunity. That's important for several reasons, all right? In our reply brief, we cite the Walton versus City of Verona case. That was a case where the only claim in the case was a state law negligence claim, and that was immediately appellable to this court. The court had no problem with jurisdiction, and the case ultimately went off on no duty under state law, so we made two arguments there. We said no duty element, and even if there was a duty, then you still can't meet the heightened requirement of reckless disregard under the statute. The case went off on the duty element. There was no problem with jurisdiction there. That's important, again, because in this case, this court has jurisdiction over the city, over the appeal from the city under the state law claim, no matter what, because of all the state law claims, and we make this a similar argument here. We say you can't meet any of the underlying elements because there's probable cause, but even if you somehow could, then we have the added additional bar of reckless disregard. The fact that the city is already before the court, and if you decided this case on the underlying probable cause element, that would take care of both claims, and of course, there's not a qualified immunity component under state law, so you wouldn't get to that inquiry anyway. I think that's another reason why it's really important to decide this on the constitutional prong, because it does so much work in the case of taking care of all that. You say if it gets back to Judge Bramley, he's going to do the right thing if we tell him what's right. Well, I don't think you have to get there is sort of my point, because practically, you know, of course, this court has discretion under Pearson to either go straight to step two of qualified immunity or decide the underlying constitutional prong. I think my only point is there's good reasons in this case of why you would tackle the constitutional prong rather than just skipping and saying no analysis. I think there are good reasons to do that. You're going to have other clients down the road, probably, that are going to be looking for a holding like that. Potentially. I don't blame you. I'll end with just a few other factual things that sort of jump out to me at the record. My friend mentioned the statement that the plaintiff wrote. You know, one thing that the plaintiff wrote is just not true. She wrote in her statement that day in support of the idea that, hey, this was a joke. She said, oh, the Kia person, we laughed about it on the phone. That's not true. If you listen to the audio recording, that Kia representative did not laugh anywhere on that audio, and then they, in fact, took the threat seriously enough to call it in to the local police department. And then the other thing, you know, what, obviously, just thinking about your point, you know, we're talking about probable cause and Fourth Amendment issues, so we're talking about an objective standard, not a subjective standard, and they didn't have to, you know, even identify the right charge at the time. We, post hoc, we could point to any statute, and we point to several in the record, several misdemeanor statutes in addition to the felony probable cause. I would just make the point, whatever you think about the felony charge that she was charged with, that decision was made by the district attorney's office. The arresting officer called the district attorney's office and said, here's what happened. What's the charge? And the district attorney is the one that said, hey, use the terroristic threat statute. So, I do think that's a meaningful point to bring out. So, thank you, Your Honor. Thank you, Mr. Butler. Your case and all of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow.